**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: PURECYCLE TECHNOLOGIES, INC. DERIVATIVE LITIGATION | Lead Case No. 21-1569-RGA |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
<u>APPROVAL OF FEE AND EXPENSE AMOUNT AND SERVICE AWARDS</u>**

Dated:  April 10, 2025

Of Counsel:

**WEISS LAW**
David C. Katz
Joshua M. Rubin
Mark D. Smilow
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 682-3025
dkatz@weisslawllp.com
jrubin@weisslawllp.com
msmilow@weisslawllp.com

*Lead Counsel for Plaintiff*

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole
Correy A. Suk
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
gnespole@zlk.com
csuk@zlk.com

*Additional Counsel for Plaintiff*

**COOCH AND TAYLOR, P.A.**
Blake A. Bennett (#5133)
The Brandywine Building
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 984-3800
bbennett@coochtaylor.com

*Liaison Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ........................................................................................................ 1

II.  THE FEE AND EXPENSE AMOUNT IS FAIR AND REASONABLE
AND SHOULD BE APPROVED ................................................................................. 3

   A.  The Fee and Expense Amount Was Agreed To At Arm's-Length With
The Assistance Of An Experienced Mediator ..................................................... 3

   B.  The Fee And Expense Amount Is Fair And Reasonable Considering
The Benefits Conferred ....................................................................................... 6

   C.  The *Gunter* Factors Confirm That The Negotiated Fee And Expense
Amount Is  Fair And Reasonable ...................................................................... 11

      1.  Since Notice Was Disseminated, Plaintiff Has Received
No Objections to the Settlement or the Fee and Expense Amount.............. 11

      2.  Counsel's Qualifications, Experience, Skill, and Professionalism.............. 12

      3.  The Complexity and Duration of the Litigation ......................................... 13

      4.  Settling Stockholders' Counsel Undertook the Risk of Non-Payment......... 13

      5.  The Amount of Time Devoted to the Case by Settling
Stockholders' Counsel and Lodestar Crosscheck ...................................... 15

   D.  The Service Awards Should Be Approved ........................................................ 19

   E.  The Expenses Are Reasonable And Should Be Approved ............................... 20

III.  CONCLUSION............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                              **Page(s)**

*Baldwin Emergency Med. Serv. v. Highmark, Inc.*,
  2006 U.S. Dist. LEXIS 49287 (W.D. Pa. June 30, 2006) ...........................................................4

*Bednar v. Cleveland BioLabs, Inc.*,
  2023 Del. Ch. LEXIS 171 (Del. Ch. June 13, 2023) ...........................................................16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...........................................................6

*Chrysler Corp. v. Dann*,
  223 A.2d 384 (Del. 1966) ...........................................................9, 14

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ...........................................................18

*Clem v. Skinner*,
  2025 U.S. Dist. LEXIS 15371 (D. Del. Jan. 28, 2025) ...........................................................15, 20

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ...........................................................3

*Court Awarded Attorney's Fees*,
  108 F.R.D. 237 (3d Cir. Oct. 8, 1985) ...........................................................5, 8

*Del Monte Foods Co. S'holder Litig.*,
  2011 Del. Ch. LEXIS 94 (Del. Ch. June 7, 2011) ...........................................................12

*Doe v. Int'l Fin. Corp.*,
  2024 U.S. Dist. LEXIS 181584 (D. Del. Oct. 3, 2024) ...........................................................4

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ...........................................................6

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ...........................................................6, 14

*Hall v. AT&T Mobility LLC*,
  2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010) ...........................................................12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...........................................................3

*In MRV Communs., Inc. Derivative Litig.*,
  2013 U.S. Dist. LEXIS 86295 (C.D. Cal. June 6, 2013) ...........................................................12

*In re AOL Time Warner S'holder Derivative Litig.*,
2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Feb. 1, 2010) ........................................4

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ........................................12

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ........................................6

*In re Atmel Corp. Derivative Litig.*,
2010 U.S. Dist. LEXIS 145551 (N.D. Cal. Mar. 31, 2010) ........................................11

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................3, 18

*In re Caremark Int'l*,
698 A.2d 959 (Del. Ch. 1996) ........................................8

*In re Cendant Corp. Prides Litig.*,
243 F.3d 722 (3d Cir. 2011) ........................................8

*In re Cendant Corp., Derivative Litig.*,
232 F. Supp. 2d 327 (D.N.J. 2002) ........................................7

*In re GMC Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................13

*In re Healthcare Servs. Grp., Inc. Derivative Litig.*,
2022 U.S. Dist. LEXIS 134005 (E.D. Pa. July 27, 2022) ........................................15

*In re Impinj, Inc. Derivative Litig.*,
2021 U.S. Dist. LEXIS 224687 (D. Del. Nov. 22, 2021) ........................................13, 17

*In re Intel Corp. Derivative Litig.*,
2010 U.S. Dist. LEXIS 74661 (D. Del. July 22, 2010) ........................................16

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 U.S. Dist. LEXIS 12095 (S.D.N.Y. Dec. 23, 2009) ........................................18

*In re NTL, Inc. Sec. Litig.*,
2007 U.S. Dist. LEXIS 32285 (S.D.N.Y. May 2, 2007) ........................................18

*In re Ocean Power Techs., Inc.*,
2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov. 15, 2016) ........................................13

*In re Plains Res., Inc. S'holders Litig.*,
2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005) ........................................14

*In re Processed Egg Prods. Antitrust Litig.*,
2012 U.S. Dist. LEXIS 160764 (E.D. Pa. Nov. 9, 2012) ........................................7

*In re Prudential Ins. Co. of America Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 2006) ...........................................................................6, 15

*In re Rambus Inc. Derivative Litig.*,
2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20, 2009) ......................................11

*In re Ravisent Techs., Inc. Sec. Litig.*,
2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) ...............................................7

*In re Reliance Sec. Litig.*,
2002 U.S. Dist. LEXIS 29422 (D. Del. Feb. 8, 2002) ............................................15

*In re Schering-Plough Corp. S'holders Derivative Litig.*,
2008 U.S. Dist. LEXIS 2569 (D.N.J. Jan. 14, 2008) ....................................5, 10, 16

*In re Schering-Plough/Merck Merger Litig.*,
2010 U.S. Dist. LEXIS 29121 (D.N.J. March 25, 2010) .........................................4

*In re Viropharma Inc. Sec. Litig.*,
2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ...........................................14

*In re Warner Commun's Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ......................................................................13

*Jermyn v. Best Buy Stores, L.P.*,
2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) .......................................18

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ...............................................................................5

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991) ..............................................................................................6

*Lindy Bros. Builders, Inc. of Phila. v. Am Radiator & Standard Sanitary Corp.*,
487 F.2d 161 (3d Cir. 1973) ...............................................................................14

*McLendon v. Cont'l Grp., Inc.*,
872 F. Supp. 142 (D.N.J. 1994) .........................................................................14

*Milliron v. T-Mobile USA, Inc.*,
2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009) .........................................12

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970) .............................................................................................6

*O'Hern v. Vida Longevity Fund, LP*,
2023 U.S. Dist. LEXIS 76789 (D. Del. May 2, 2023) ......................................13, 18

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ................................................................................4

*Pfeiffer v. Alpert*,
    2011 U.S. Dist. LEXIS 174370 (D. Del. Aug. 3, 2011) .........................................................16

*Prandini v. National Tea Co.*,
    557 F.2d 1015 (3d Cir. 1977) .........................................................................................3

*Roberti v. OSI Sys.*,
    2015 U.S. Dist. LEXIS 164312 (C.D. Cal. December 18, 2015) ...............................................18

*Segen v. OptionsXpress Holdings, Inc.*,
    631 F. Supp. 2d 465 (D. Del. 2009) .........................................................................................8

*Seinfeld v. Coker*,
    847 A.2d 330 (Del. Ch. 2000) ...........................................................................................14, 18

*Shapiro v. JPMorgan Chase & Co.*,
    2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21, 2014) .........................................................4

*Shlensky v. Dorsey*,
    574 F.2d 131 (3d Cir. 1978) .........................................................................................6

*Tandycrafts, Inc. v. Initio Partners*,
    562 A.2d 1162 (Del. 1989) .........................................................................................7

*Unite Nat'l Ret. Fund v. Watts*,
    2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28, 2005) ...........................................................10

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*,
    2017 U.S. Dist. LEXIS 152725 (E.D. Pa. Sept. 20. 2017) .....................................................14

*Weaver v. Moen*,
    2024 U.S. Dist. LEXIS 159346 (D. Del. Sept. 4, 2024) ...................................................*passim*

**Rules**

Fed. R. Civ. P. 23.1 .........................................................................................10

Plaintiff Patrick Ayers respectfully submits this Memorandum of Law in Support of the Motion for Final Approval of Fee and Expense Amount and Service Awards.[1]

## I.      INTRODUCTION

The Settlement, including the agreed-upon Fee and Expense Amount, has been evaluated and approved by PureCycle's Board of Directors in the good faith exercise of its business judgment. Stip. ¶2.3. The Board, on behalf of the Company and by resolution of its independent directors, confirmed that the Settlement, both the $3 million Monetary Component and the Reforms, confers substantial benefits on the Company and its stockholders, serves the best interests of the Company and its stockholders, and that the filing, pendency, and prosecution of the Derivative Matters are the sole cause of the $3 million monetary payment to be made to PureCycle by its Insurers as part of this Settlement and the primary cause of the Board's agreement to adopt, implement, and maintain the Corporate Governance Reforms (the "Reforms") for the agreed five year term. *Id.*

The Settlement is an outstanding resolution of this highly complex action and the product of extensive arm's-length negotiations between the Settling Parties, overseen by Jed D. Melnik, Esq. of JAMS, an experienced, well-informed, and nationally recognized mediator (the "Mediator"), who also successfully mediated the resolution of the Securities Action. Stip. at 5; Katz Decl. ¶¶4, 17-18; Ex. 4 ("Melnick Decl."), ¶3. Only after reaching agreement on the Reforms, the Settling Parties commenced arm's-length negotiations facilitated by the Mediator regarding reasonable attorneys' fees, expenses, and

---

[1]  This memorandum of law also responds to the concerns raised in the Court's February 25, 2025 Order (D.I. 51 at 6). *See* Section II.C.5, *infra*.  Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation and Agreement of Settlement dated July 17, 2024 (the "Stipulation" or "Stip.," D.I. 33-1), all internal quotation marks and citations are omitted and all emphasis is supplied and all references to Plaintiff's Consolidated Derivative Complaint (D.I. 26) (the "Complaint") will take the form "¶ __." All references to exhibits to the Declaration of David C. Katz in Support of Plaintiff's Motions for Final Approval of Settlement and of Fee and Expense Amount and Service Awards ("Katz Decl.") will take the form "Ex. __."

service awards. Stip. at 5; Katz Decl. ¶8; Melnick Decl. ¶13. In recognition of the substantial benefits the Settlement confers on PureCycle and its stockholders, PureCycle agreed to pay from the Settlement's Monetary Component the amount of $2 million for attorneys' fees and reimbursement of expenses, subject to this Court's approval. D.I. 31 at 3 n. 5. Regardless, Plaintiff now respectfully seeks Court approval of a Fee and Expense Amount of $1.75 million. *Id.* Plaintiff respectfully submits that the Fee and Expense Amount is fair and reasonable in light of the substantial value conferred upon PureCycle and its stockholders by the Settlement and all other relevant factors. The lodestar crosscheck easily confirms the fairness and reasonableness of that agreed-upon Fee and Expense Amount.

The negotiation of a monetary payment in a derivative action is a rare result only achieved in about 26% of such actions. *See* Section II.B, *infra*. Typically, such an outstanding result is reserved for large cases as reflected by an independent analysis finding that the median settlement amount was $34 million for securities class actions where a related derivative action negotiated a monetary settlement—almost triple the settlement of the Securities Action here. Further, the study found that over one quarter of derivative action settlements with a monetary component were fueled by regulatory enforcement actions, and over 10% were driven by criminal charges—neither of which was present here to provide a roadmap to recovery. Despite the long odds against reaping a monetary recovery here, Settling Stockholders' Counsel forged a strategy based upon their substantial experience and careful investigative and research efforts to build sufficient leverage to insist upon and ultimately negotiate a material monetary recovery for PureCycle—representing approximately 30% of the Company's financial damages incurred in defending and resolving the Securities Action. Settling Stockholders' Counsel's substantial commitment of significant time and resources paid off for PureCycle and its stockholders and well supports approval of the Fee and Expense Amount.

Moreover, even on their own, the Reforms negotiated here support approval of the Fee and Expense Amount. Professor Charles Korsmo of Case Western Reserve University provides an expert analysis of the negotiated Reforms and their value to PureCycle and its stockholders, concluding that a conservative value of the Reforms to PureCycle over their five-year term is $33.8 million. Ex. 3 ("Korsmo Decl.") ¶¶14, 29, 70. Professor Korsmo found that "the Reforms target directly the misconduct alleged in this case, will manifestly function to reduce the chance of recurrence, and are aimed at developing processes to improve information and oversight systems to support better decision-making to the benefit of PureCycle and its stockholders." Korsmo Decl., ¶10.

Plaintiff also seeks approval of a modest $2,000 Service Award for the Plaintiff and the three other Settling Stockholders in the Derivative Matters to be paid from the Fee and Expense Amount to compensate them for stepping forward and dedicating their time to the successful prosecution of this matter on behalf of PureCycle and its stockholders.

## II.    THE FEE AND EXPENSE AMOUNT IS FAIR AND REASONABLE AND SHOULD BE APPROVED

### A.    The Fee and Expense Amount Was Agreed To At Arm's-Length With The Assistance Of An Experienced Mediator

The United States Supreme Court has endorsed the consensual resolution of attorneys' fees issues—as occurred here—as ideal. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *see also In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (parties' negotiated agreement on fee supports approval); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 861 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference").

Where there is no evidence of collusion, as here, a negotiated fee amount is entitled to substantial weight and deference. *Prandini v. National Tea Co.*, 557 F.2d 1015, 1021 (3d Cir.

1977); *Baldwin Emergency Med. Serv. v. Highmark, Inc.*, 2006 U.S. Dist. LEXIS 49287, at *15 (W.D. Pa. June 30, 2006); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.").

A mediator's involvement in the attorneys' fees agreed to further ensures there was no collusion and that the fee reflects an agreement reached at arm's-length. *See In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, *58 (D.N.J. March 25, 2010) (considering the fact that the fee amount was negotiated with the assistance of a neutral third party in fee approval); *In re AOL Time Warner S'holder Derivative Litig.*, 2009 U.S. Dist. LEXIS 124372, at *74 (S.D.N.Y. Feb. 1, 2010) (A "'mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.'") (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). As the Mediator attests (Ex. 4), negotiations over the Fee and Expense Amount included counsel for the Settling Parties, a representative of PureCycle, and the Insurers, and commenced only after the Settling Parties had agreed to the principal terms of the Settlement. *See Doe v. Int'l Fin. Corp.,* 2024 U.S. Dist. LEXIS 181584, at *33 (D. Del. Oct. 3, 2024) ("The Court additionally notes that the fee award was negotiated only after agreement on the total settlement value, leaving no concern for collusion."); *Shapiro v. JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 37872, at *85 (S.D.N.Y. Mar. 21, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness."). In reaching agreement, the negotiations focused on the value of the Settlement, as well as its benefit to the Company and its stockholders, were informed by careful assessment of fees in comparable derivative actions, and were at all times adversarial, hard-fought, and at arm's-length. *See* Melnick Decl., ¶¶12, 14, 18, 20. These

circumstances support the reasonableness of the Fee and Expense Amount. *See, e.g.*, *In re Schering-Plough Corp. S'holders Derivative Litig.*, 2008 U.S. Dist. LEXIS 2569, at *16-17 (D.N.J. Jan. 14, 2008) (approving fees in derivative settlement that were "the product of mediation" where the mediator indicated he was "fully satisfied with the resolution the parties reached").

After the principal terms of the Settlement were reached, Settling Stockholders' Counsel negotiated with their adversaries, who witnessed their efforts firsthand. Settling Defendants' Counsel are attorneys employed by some of the finest and most respected firms in the country, have litigated complex stockholder actions for many years, and know the applicable law pertaining to the negotiation of reasonable attorneys' fees. Katz Decl., ¶60. The Settling Parties' negotiations were based upon a knowledgeable analysis of what an appropriate attorney fee would be for the benefits achieved and were informed by their experienced counsel's knowledge of fees in similar situations. Melnick Decl. ¶¶16, 18, 20, 21; Katz Decl. ¶60. In such circumstances, the end result of those negotiations—reflecting all Parties' experiences and the Mediator's efforts to reach an appropriate amount of attorneys' fees—is entitled to a great deal of judicial weight. *See Court Awarded Attorney's Fees*, 108 F.R.D. 237, 267 (3d Cir. Oct. 8, 1985); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees.").

In determining whether to approve an agreed-upon attorney fee, the Third Circuit has set forth seven factors for courts to consider:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).[2] These factors "need not be applied in a formulaic way… In certain cases, one factor may outweigh the rest." *Id.* The *Gunter* factors are "not intended to be exhaustive." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006); *see also In re Prudential Ins. Co. of America Sales Practice Litig.*, 148 F.3d 283, 340 (3d Cir. 2006). Rather, courts within the Third Circuit must also consider additional factors such as (i) the value of benefits conferred by counsel as distinguished from benefits conferred by other parties such as governmental agencies; (ii) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement; and (iii) any innovative settlement terms. *See Prudential*, 148 F.3d at 338.

Application of these factors well supports approval of the Fee and Expense Amount.

## B.    The Fee And Expense Amount Is Fair And Reasonable Considering The Benefits Conferred

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Under the "substantial benefit" doctrine, counsel who prosecute a shareholder derivative action that confers benefits on the corporation and its stockholders are entitled to an award of attorneys' fees and costs. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 476 (1980). As explained by the Third Circuit: "The plaintiffs in a shareholders' derivative action may … recover their expenses, including attorneys' fees, from the corporation on whose behalf their action is taken if the corporation derives a benefit, which may be monetary or nonmonetary, from their successful prosecution or settlement of the case." *Shlensky v. Dorsey*, 574 F.2d 131, 149 (3d Cir. 1978); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) (holding that "a corporation may receive a 'substantial benefit' from a [stockholder derivative action], justifying an award of counsel fees, regardless of whether the benefit

---

[2]    Although PureCycle is a Delaware corporation subject to Delaware state law (*see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-97 (1991)), motions for approval of attorneys' fees are made pursuant to Federal law, *see* Fed. R. Civ. P. 23.1, and thus require application of the Third Circuit's standards set out in *Gunter* and its progeny.

is pecuniary in nature," because "private stockholders' actions of this sort involve corporate therapeutics" that "furnish a benefit to all shareholders"); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989).

The Settlement provides for a $3 million cash payment to the Company from its Insurers, something that occurs in only a small percentage of derivative settlements.[3] Fee awards in the Third Circuit for cases involving settlement funds confirm that the $3 million Monetary Component alone justifies approval of a material portion of the Fee and Expense Amount, up to 45% of the Monetary Component (or $1,350,000). *See In re Cendant Corp., Derivative Litig.*, 232 F. Supp. 2d 327, 339 (D.N.J. 2002) ("The Third Circuit has noted that … most fee awards range from nineteen percent to forty-five percent of the settlement fund."); *In re JELD-WEN Holding, Inc. Derivative Litig.*, No. 1:21-cv-135 (D. Del. Dec. 20, 2022) (awarding 22% of monetary recovery) (Ex. 13); *In re Processed Egg Prods. Antitrust Litig.*, 2012 U.S. Dist. LEXIS 160764, at *12 (E.D. Pa. Nov. 9, 2012) ( "[S]everal district courts within the Third Circuit have awarded fees ranging from 30 to 35 percent of a settlement fund"); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at *40 (E.D. Pa. Apr. 18, 2005) ("[C]ourts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses."). Indeed, courts have approved fees up to 80% of the monetary recovery in derivative actions. *See, e.g., In re ComScore, Inc. S'holder Derivative Litig.*, No. 16-9855 (S.D.N.Y. June 7, 2018) (approving fee equal to 80% of total monetary recovery based on additional value conferred by corporate governance reforms) (Ex. 14); *In re Atmel Corp. Derivative Litig.*, No. 06-4592 (N.D. Cal. Aug. 13, 2010) (approving fee equal to 51% of total

---

[3] An empirical study determined that only 26% of derivative settlements in cases with a parallel securities class action resulted in any monetary recovery whatsoever. Laarni T. Bulan & Matthew Davis, *Cornerstone Rsch.*, Parallel Derivative Action Settlement Outcomes: 2023 Review and Analysis (2024), https://www.cornerstone.com/wp-content/uploads/2024/08/Parallel-Derivative-Action-Settlement-Outcomes-2023-Review-and-Analysis.pdf ("*Cornerstone*") at 2.

monetary recovery based on additional value conferred by corporate governance reforms) (Ex. 15); *In re Apple Computer, Inc. Derivative Litig.*, No. 06-4128 (N.D. Cal. Nov. 5, 2008) (approving fee equal to 61% of the monetary recovery for settlement with meaningful governance reforms) (Ex. 16).

In considering a fair and reasonable fee for a monetary settlement, the Third Circuit highlights that "[o]ne important consideration is the size of the settlement." *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 736 (3d Cir. 2011). The expectation being that "absent unusual circumstances, the percentage will decrease as the fund increases." *Court Awarded Attorney's Fees*, 108 F.R.D. 237, 256 (1985); *Cendant*, 243 F.3d at 736 (citing *Prudential*, 148 F.3d at 339); *Segen v. OptionsXpress Holdings, Inc.*, 631 F. Supp. 2d 465, 470 (D. Del. 2009). The grounds cited by the Third Circuit for this "inverse relationship" is that in many instances the increase in recovery is merely a factor of the size of the claim and "has no direct relationship to the efforts of counsel." *Cendant*, 243 F.3d at 736 (citing *Prudential*, 148 F.3d at 339).

Plaintiff played a difficult hand here, facing demanding standards,[4] made all the more demanding in light of the fact that there was no regulatory action by, for example, the SEC or Department of Justice, and there were no criminal charges brought regarding the underlying conduct. Indeed, 27.6% and 10.3% of derivative actions with a monetary settlement are fueled by such regulatory actions or criminal charges, respectively. *Cornerstone* at 3. Moreover, "derivative settlements with a monetary component are associated with higher class action settlements, consistent with a view that the monetary settlements correlate with the size of the case and the strength of the underlying allegations." *Id.* Here, the damages in the related Securities Action were relatively low in comparison to securities cases associated with a related derivative case with a monetary settlement. Such derivative cases are associated with securities class action

---

[4] Indeed, the Delaware Court of Chancery has described the failure of a Board's duty to monitor as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l*, 698 A.2d 959, 967 (Del. Ch. 1996).

settlements with a median recovery of $34 million, nearly triple the $12 million recovery of the Securities Action settlement here. *Id.*

Settling Stockholders' Counsel looked at these facts yet steadfastly stood on their demand for a meaningful monetary settlement, investing substantial time and effort on a contingency basis into forging a strategy that would build sufficient leverage with which to negotiate a monetary settlement in the face of these difficult facts and demanding standards. Ultimately, that strategy paid off for PureCycle and its stockholders and Settling Stockholders' Counsel negotiated a monetary recovery of approximately 30% of the Company's financial damages incurred in defending and resolving the Securities Action Truly, an exceptional result, in difficult circumstances, that well supports approval of the Fee and Expense Amount agreed to by experienced counsel at arm's length with the assistance of a highly regarded mediator.

Moreover, the significant corporate governance therapeutic benefits conferred upon PureCycle and its stockholders as a result of the Settlement are valuable and compensable. *See Chrysler Corp. v. Dann*, 223 A.2d 384, 386-89 (Del. 1966) (holding that changes in corporate policy or enhanced protections for stockholders justify approval of counsel fees). The Settlement's preventing, or at least reducing the possibility of, PureCycle suffering similar (or even greater) harm in the future has a value that well exceeds even the Monetary Component of the Settlement. Plaintiff has retained Professor Charles L. Korsmo of Case Western Reserve University School of Law to quantify the value of the Reforms. Professor Korsmo attests that the Reforms here—which will remain in place for at least five years and include, among other things, expanding the Board to add two new independent directors, creating a Chief Compliance Officer position with specified responsibilities over the Company's ethics and legal and regulatory compliance programs, the creation of a Board-level Operation Excellence Committee, the engagement of corporate governance consultant, the adoption of a Charter to formalize the Company's management-level Disclosure Committee, and significant amendments to PureCycle's Audit and Finance Committee Charter and

Corporate Governance Guidelines—"strengthen the Company's governance generally, and particularly with respect to disclosures, will significantly reduce the likelihood of a recurrence of the kind of alleged misconduct leading to this litigation." Korsmo Decl., ¶¶2, 6, 31–32, 62, 64–68, 78. Further, the "Reforms are well-designed to (i) ensure a compliance-focused "tone at the top" at PureCycle, (ii) ensure the Board is independent, and (iii) improve the control systems that support the Company's decision-making processes and operations." *Id.* at ¶¶2, 78. As such, the Reforms "directly target the areas of misconduct and the governance failures underlying the allegations" in the Derivative Matters and "provide significant value to the Company and its shareholders" (*id.*), leading to an "extremely conservative" quantification of the value of the Reforms of "***$33.8 million***." *Id.* at ¶26; *see also* Stip. ¶2.3 (A)-(P) (summarizing the Reforms); Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Settlement at 11–14 (describing the benefits of the Reforms). The Fee and Expense Amount represents just a fraction of the value created by the Reforms (5.18%), and an even smaller fraction of the combined value of the Settlement (4.76%), which well supports approval of the Fee and Expense Amount.

Given that the value of the Settlement's material Reforms, considered independently, fully supports the Fee and Expense Amount and the Settlement's Monetary Component standing alone supports a material portion of the Fee and Expense Amount, Plaintiff respectfully submits that the combined value of the Settlement to the Company and its stockholders more than justifies the agreed-to Fee and Expense Amount. Indeed, courts within the Third Circuit and elsewhere have awarded fees ranging from $1.85 million to $9.5 million for derivative settlements providing for similar or less extensive corporate governance reforms with no monetary component whatsoever.[5] *See, e.g.*, *In re Schering-Plough*, 2008 U.S. Dist. LEXIS 2569 (D.N.J. Jan. 14, 2008) ($9.5 million); *Unite Nat'l Ret. Fund v. Watts*, 2005 U.S. Dist.

---

[5] The chart attached as Ex. 3 to the Katz Declaration provides a full description of the governance reforms from these cases as compared to the similar reforms adopted here.

LEXIS 26246 (D.N.J. Oct. 28, 2005) ($9.2 million); *In re Atmel Corp. Derivative Litig.*, 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. Mar. 31, 2010) ($4.94 million); *In re MiMedx Grp., Inc. S'holder Derivative Litig.*, No. 1:18-cv-4486 (N.D. Ga. Dec. 21, 2020) (Ex. 17) ($3.55 million); *In re Affymetrix Derivative Litig.*, No. C-06-5353 (N.D. Cal. June 30, 2009) (Ex. 18) ($3.5 million); *In re Walgreen Co. Derivative Litig.*, No. 1:13-cv-5471 (N.D. Ill. Dec. 16, 2014) (Ex. 19) ($3.5 million); *In re Southern Co. S'holder Derivative Litig.*, No. 1:17-cv-725 (N.D. Ga. June 9, 2022) (Ex. 20) ($3.5 million); *In re CoreCivic, Inc. S'holder Derivative Litig.*, No. 3:16-cv-3040 (M.D. Tenn. December 2, 2022) (Ex. 21) ($3.5 million); *Nixon-Crenshaw v. Coley,* No. 1:18-cv-25289 (S.D. Fla. Oct. 1, 2021) (Ex. 22) ($2.5 million); *In re Conduent Inc. S'holder Derivative Litig.*, No. 1:20-cv-10964 (S.D.N.Y. July 11, 2022) (Ex. 23) ($2.2 million); *In re 3D Sys. Corp. Derivative Litig.*, No. 0:15-cv-3756 (D.S.C. Dec. 19, 2019) (Ex. 24) ($2.15 million); *In re Zuora, Inc. Derivative Litig.*, No. 19-cv-5701 (N.D. Cal. September 18, 2023) (Ex. 25) ($2 million); *In re Rambus Inc. Derivative Litig.*, 2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20, 2009) ($2 million); *In re Henry Schein, Inc. Derivative Litig.*, No. 1:19-cv-6485 (E.D.N.Y. Dec. 16, 2020) (Ex. 26) ($1.85 million).

### C.    The *Gunter* Factors Confirm That The Negotiated Fee And Expense Amount Is Fair And Reasonable

#### 1.    Since Notice Was Disseminated, Plaintiff Has Received No Objections to the Settlement or the Fee and Expense Amount

Although the objection deadline is not until April 17, 2025, since Notice was disseminated, Plaintiff's Counsel has not received and is not aware of any objections to either the Settlement or the Fee and Expense Amount and Service Awards. Katz Decl. ¶¶48, 70.  While an objection was lodged by a stockholder who filed an untimely overlapping derivative action in the Delaware Court of Chancery after the principal terms of Settlement had already been agreed to here, raising concerns at the preliminary approval stage with respect to the Notice, that stockholder expressly conceded that the Settlement provides "important governance reforms" (D.I. 31 at 3), and the Court rejected the objection as without merit in

approving the Notice regime (D.I. 50). Accordingly, this factor supports approval of the Fee and Expense

Amount. *See Milliron v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 101201, at *31 (D.N.J. Sept. 10,

2009) (absence of class member objection "is strong evidence that the requested fee is reasonable").

### 2.     Counsel's Qualifications, Experience, Skill, and Professionalism

The Derivative Matters involved highly skilled, well-informed lawyers with substantial experience

in stockholder derivative litigation on both sides. The skill and efficiency of Settling Stockholders' Counsel

is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the

recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which

counsel prosecuted the case and the performance and quality of opposing counsel." *Hall v. AT&T Mobility

LLC*, 2010 U.S. Dist. LEXIS 109355, at *63 (D.N.J. Oct. 13, 2010); *see also In re AremisSoft Corp. Sec.

Litig.*, 210 F.R.D. 109, 132 (D.N.J. 2002) ("[T]he single clearest factor reflecting the quality of class

counsels' services to the class are the results obtained."). Settling Stockholders' Counsel have extensive

experience and have achieved significant results for companies and stockholders across the country. *See*

D.I. 33-2, 33-4 – 33-10. Settling Stockholders' Counsel provided extensive, high-quality representation

throughout the pendency of the Derivative Matters, expending significant time investigating and pleading

stockholder derivative actions, stockholder books and records demands, and stockholder litigation

demands, as well as negotiating the highly favorable Settlement. *See* Katz Decl., ¶71; Ex. 5, ¶¶3, 11, 12;

Ex. 6, ¶¶3,11; Ex. 7, ¶¶4–12; Ex. 8, ¶¶4–12. The quality of Settling Stockholders' Counsel's efforts

throughout the Derivative Actions while facing premier defense firms and demanding pleading standards

demonstrate that the Fee and Expense Amount is fair and reasonable and should be approved. *See In MRV

Communs., Inc. Derivative Litig.*, 2013 U.S. Dist. LEXIS 86295, at *19 (C.D. Cal. June 6, 2013)

(approving fee and finding that "the successful prosecution of this action required knowledge and expertise

in the fields of shareholder derivative litigation[.]"); *Del Monte Foods Co. S'holder Litig.*, 2011 Del. Ch.

LEXIS 94, at *40 (Del. Ch. June 7, 2011) ("More important than hours is effort, as in what plaintiffs'

counsel actually did."); *In re Warner Commun's Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

### 3. The Complexity and Duration of the Litigation

This factor is intended to capture "the probable costs, in both time and money, of continued litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). "Shareholder derivative actions are, by their nature, undeniably complex." *In re Impinj, Inc. Derivative Litig.*, 2021 U.S. Dist. LEXIS 224687, at *7 (D. Del. Nov. 22, 2021). The difficulty of the legal and factual issues confronting Settling Stockholders, such as the challenges of adequately pleading demand futility (or wrongful demand refusal) and liability under one of the most difficult theories in corporate law, as well as the very real risk of not prevailing on their claims, support approval of the Fee and Expense Amount. *See In re Ocean Power Techs., Inc.,* 2016 U.S. Dist. LEXIS 158222, at *88 (D.N.J. Nov. 15, 2016) (approving fee based on "legal and factual hurdles" plaintiffs faced to succeed in establishing liability and damages). Even if Settling Stockholders prevailed in establishing demand futility (or, in the case of the Delaware Chancery Action, that demand was wrongfully refused), the litigation would involve protracted document discovery, numerous depositions, summary judgment motions, a battle of the experts as to damages, and, potentially, trial, as well as the appeals that would inevitably follow. The likely expense and duration of continued litigation as compared to the immediate benefits conferred by the Settlement weighs strongly in favor of approval. *See O'Hern v. Vida Longevity Fund, LP*, 2023 U.S. Dist. LEXIS 76789, at *26 (D. Del. May 2, 2023) (finding this *Gunter* factor supported fee approval where plaintiffs' claims "would require a showing of scienter in the face of competing narratives and expert testimony").

### 4. Settling Stockholders' Counsel Undertook the Risk of Non-Payment

Settling Stockholders' Counsel undertook this action on an entirely contingent fee basis, assuming the risk that the litigation would yield no recovery and leave them uncompensated for their time, as well as

their out-of-pocket expenses. *See* D.I. 33; D.I. 33-4 – 33-10. The risk that counsel would receive little or no recovery is an important factor in considering the approval of attorneys' fees. *Gunter*, 223 F.3d at 195 n.1. In fact, committing a law firm's substantial time and resources on a contingency basis warrants the award of a substantial premium over standard hourly rates. *See Lindy Bros. Builders, Inc. of Phila. v. Am Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973) (counsel who provided representation on contingency basis entitled to substantial risk premium over fixed hourly rates); *McLendon v. Cont'l Grp., Inc.*, 872 F. Supp. 142, 156 (D.N.J. 1994) (finding it "unlikely" that "attorneys will find sufficient incentive to bring even highly meritorious suits … if they will at best recover merely their regular hourly rates if they prevail, and nothing if they do not"); *Chrysler*, 223 A.2d at 389 (Chancellor exercised "sound business judgment" by taking "the contingent nature of the litigation" into consideration in fixing the amount of attorneys' fees); *In re Plains Res., Inc. S'holders Litig.*, 2005 Del. Ch. LEXIS 12, at *22 (Del. Ch. Feb. 4, 2005) (noting public policy "to reward this risk-taking in the interests of shareholders"); *Seinfeld v. Coker*, 847 A.2d 330, 337 (Del. Ch. 2000) (contingency representation in representative action entitles plaintiff's counsel to both "risk" premium and "incentive" premium on top of their hourly services).

The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Given the difficulty in undertaking a derivative lawsuit and Settling Stockholders' Counsel assuming the significant risk of non-payment, this factor weighs in favor of approval of the Fee and Expense Amount. *See W. Palm Beach Police Pension Fund v. DFC Global Corp.*, 2017 U.S. Dist. LEXIS 152725, at *24 (E.D. Pa. Sept. 20. 2017) (where "counsel undertook this matter on an entirely contingent fee basis … [t]his factor weighs in favor of approving the fee petition"); *In re Viropharma Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 8626, at *51 (E.D. Pa. Jan. 25, 2016) (awarding attorneys' fees, noting that "Plaintiff's Counsel took on significant risk of non-payment").

      5.        **The Amount of Time Devoted to the Case by Settling Stockholders' Counsel and Lodestar Crosscheck**

A "lodestar cross-check" easily supports the fairness and reasonableness of the agreed upon Fee and Expense Amount. *See In re Reliance Sec. Litig.*, 2002 U.S. Dist. LEXIS 29422, at *59-60 (D. Del. Feb. 8, 2002) ("The Third Circuit … requires that the percentage fee award be cross checked against the lodestar multiplier that would have to be applied to receive the same result."); *Weaver v. Moen*, 2024 U.S. Dist. LEXIS 159346, at *16 (D. Del. Sept. 4, 2024) ("In non-fund cases, district courts use a lodestar approach to evaluate such an award.").

Plaintiff's Lead Counsel together with additional Plaintiff's Counsel and associated Delaware Counsel collectively invested 1,208 hours in the Derivative Matters, amounting to $1,193,349.00 in lodestar, in prosecuting and resolving the Federal Action and incurred expenses of $75,718.57.[6] If the Court were to consider only the lodestar and expenses of the Federal Counsel, the Fee and Expense Amount would equate to a nominal lodestar multiplier of 1.403, at the extreme low-end of the range of lodestar multipliers commonly awarded in the Third Circuit. *See In re Prudential*, 148 F.3d at 341 (explaining that lodestar "[m]ultipliers ranging from one to four are frequently awarded"); *In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 U.S. Dist. LEXIS 134005, at *43 (E.D. Pa. July 27, 2022) (awarding 2.01 multiplier, which is "lower than those approved and acknowledged as reasonable within this Circuit and around the country") (collecting cases); *Clem v. Skinner*, 2025 U.S. Dist. LEXIS 15371, at *21 (D. Del.

---

[6] Weiss Law worked 862.7 hours for $902,189.50 in lodestar, with $73,033.42 in expenses (D.I. 33; D.I.33-3), inclusive of expenses incurred after preliminary approval in connection with the expert report filed herewith; Levi & Korsinsky, LLP worked 310.4 hours for $267,450.00 in lodestar, with $1,622.84 in expenses (D.I. 33-4); Cooch and Taylor, P.A. worked 20.9 hours for $16,720.00 in lodestar, with $406.90 in expenses (D.I. 33-9); and Bielli & Klauder, LLC worked 14.0 hours for $6,989.50 in lodestar, with $655.41 in expenses (D.I. 33-10). All lodestar relates to the period up to the filing of the Motion for Preliminary Approval and does not reflect the substantial time invested in responding to the rejected objection regarding Notice and preparing the Motion for Final Approval of Settlement and supporting documents.

Jan. 28, 2025) (awarding 1.65 multiplier in light of the "quality of representation," the "benefit obtained …
*i.e.*, the corporate governance reforms," and the "complexity … of the issues presented"); *In re Schering-
Plough*, 2008 U.S. Dist. LEXIS 2569, at *17 (awarding 1.37 multiplier); *Pfeiffer v. Alpert*, 2011 U.S. Dist.
LEXIS 174370, at *9 (D. Del. Aug. 3, 2011) (awarding 1.26 multiplier).

In addition, per the Court's Order (D.I. 51 at 6), the other law firms comprising Settling
Stockholders' Counsel have revised their declarations limiting their time entries to work that is attributable
to the Federal Action (*i.e.*, their work devoted to the negotiating and documenting the Settlement presented
in the Federal Action). *See* Exs. 5-8. When this additional lodestar is considered,[7] the total aggregate
lodestar for work performed in connection with the Federal Action by all Settling Stockholders' Counsel is
$1,557,184.00, reflecting a multiplier of just 1.075—which is well below the precedent lodestar multipliers
discussed above; certainly not a windfall to Settling Stockholders' Counsel.

Finally, the Court's February 13, 2025 Order requested that Plaintiff submit a brief explaining why
the Court should consider "time spent on matters other than the federal litigation in the lodestar or
otherwise." D.I. 51 at 6. It is appropriate to consider time spent on matters other than the Federal Action in
determining the reasonableness of the Fee and Expense Amount and for purposes of a lodestar crosscheck.
Indeed, in approving prior derivative settlements, this Court has considered the "aggregate lodestar,"
including both "Plaintiff's counsel['s]" lodestar and "Demand Shareholder's counsel's lodestar," when
considering whether to approve a fee as fair and reasonable. *Weaver*, 2024 U.S. Dist. LEXIS 159346, at
*16-17; *see also In re Intel Corp. Derivative Litig.*, 2010 U.S. Dist. LEXIS 74661, at *7, *15 (D. Del. July
22, 2010) (considering lodestar of and approving fees for "Delaware Plaintiffs' Counsel" and counsel for

---

[7] Kahn Swick & Foti, LLC worked 342.6 hours on the Federal Action for $258,895.00 in lodestar (Ex. 5);
Rigrodsky Law, P.A. worked 98.25 hours on the Federal Action for $56,125.00 in lodestar (Ex. 6); Kirby
McInerney LLP worked 61.9 hours on the Federal Action for $43,485.00 in lodestar (Ex. 7); and the
Portnoy Law Firm worked 5.2 hours on the Federal Action for $5,330.00 in lodestar (Ex. 8). In total, these
firms accrued $363,835.00 in lodestar for their work on the Federal Action.

"Related Plaintiffs" who had filed in a different jurisdiction); *accord Bednar v. Cleveland BioLabs, Inc.*, 2023 Del. Ch. LEXIS 171, at *11 n.5 (Del. Ch. June 13, 2023) ("In approving class action and derivative settlements, this Court has permitted counsel litigating in other forums to participate in fee awards where counsel demonstrated that their efforts causally contributed to a discreet portion of the benefit produced.").

Moreover, Delaware Chancery Counsel and Demanding Stockholders' Counsel attest that such work was performed in good faith on behalf of each firm's individual clients without any intentional duplication of effort. *See* Ex. 5, ¶¶5, 10; Ex. 6, ¶¶7,11; Ex. 7, ¶¶11, 18; Ex. 8, ¶¶11,18. Counsel for Settling Stockholders attest that they were not aware of the other books and records demands made at the time they made such demands on behalf of their clients and so did not—and could not—consciously duplicate any work. *See* Ex. 5, ¶11; Ex. 7, ¶11; Ex. 8, ¶11; *accord Impinj*, 2021 U.S. Dist. LEXIS 224687, at *30 (noting the appearance of "duplication of efforts" could also "reflect the fact that the three actions were initially brought individually"). Moreover, the Delaware Chancery Action and Demanding Stockholders proceeded on a different theory than Plaintiff in the Federal Action by making a demand upon the PureCycle Board and, in the case of the Delaware Chancery Action, asserting that the demand was wrongfully refused.

After the Settling Parties commenced global settlement negotiations in February 2024, however, Lead Counsel endeavored to coordinate the efforts of all Settling Stockholders' Counsel as much as possible to avoid any duplication of work in connection with negotiating and documenting the Settlement. *See* Katz Decl. ¶80; Ex. 5, ¶13; Ex. 6, ¶12; Ex. 7, ¶11; Ex. 8, ¶11.[8] Accordingly, when the work on all the Derivative Matters is considered, Settling Stockholders' Counsel expended a total of 2,382.7 hours,

---

[8] The Court's February 13, 2025 Order raised a concern that the high-level categorical description of work in Settling Stockholders' Counsel's original declarations reflected that "six of them did more or less the same thing." D.I. 51 at 3. But the language used in those declarations was based on the description of work in Section I.C of the Stipulation, which is a standard practice to ensure conformity for Court submissions and was not intended to suggest that each firm did the same work within each category. Indeed, the Settling Stockholders' Counsel submitted their detailed time records reflecting the unique nature of the work performed. D.I. 33-3–33-9 and exhibits thereto.

amounting to $1,991,041.50 in lodestar, and incurred expenses for all Settling Stockholders' Counsel of $81,293.81. D.I. 33 ¶50; D.I. 33-3 - 33-10. After deducting those expenses, the requested Fee and Expense Amount equates to a "negative" multiplier of that lodestar of approximately 0.838, which further supports the reasonableness of the Fee and Expense Amount. Indeed, this Court has noted that a negative multiplier is "well under the generally accepted range and provides strong additional support for approving the attorneys' fee request." *O'Hern*, 2023 U.S. Dist. LEXIS 76789, at *28; *see also Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (a "multiplier of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered [] by [] counsel"); *In re Bear Stearns*, 909 F. Supp. 2d at 271 (negative multiplier is a "strong indication of the reasonableness of the proposed fee"); *In re NTL, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 32285, at *8 (S.D.N.Y. May 2, 2007) (negative multiplier "is reasonable because it will not bring a windfall to co-lead plaintiffs' counsel"); *Jermyn v. Best Buy Stores, L.P.*, 2012 U.S. Dist. LEXIS 90289, at *27 (S.D.N.Y. June 27, 2012) ("negative lodestar multiple indicates reasonableness of fee); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 12095, at *59 (S.D.N.Y. Dec. 23, 2009) (fee request constituting "deep discount" from lodestar "unquestionably" supports the award). However, as noted above, even if this additional lodestar is not considered, the lodestar crosscheck by all accounts confirms that the Fee and Expense Amount is fair and reasonable.[9]

In addition, the hourly rates charged by Settling Stockholders' Counsel are unquestionably reasonable. *See Roberti v. OSI Sys.*, 2015 U.S. Dist. LEXIS 164312, at *20 (C.D. Cal. December 18, 2015); *Seinfeld v. Coker*, 847 A.2d 330, 337-38 (Del. Ch. 2000) (awarding fee amounting to more than $1,300 per hour where the litigation was not hard fought, expedited proceedings were not sought, and no motion

---

[9] None of the lodestar calculations detailed above made any deductions for the proposed Service Awards of $2,000 to each of the four Settling Stockholders requested to be paid out of the Fee and Expense Amount. If the Service Awards are approved, the effective lodestar multipliers would be even lower.

practice occurred); *see also* Ex. 29 (holding that hourly rates were reasonable and approved). Indeed, the hourly rates charged by Settling Stockholders' Counsel are comparable to the fees charged by Defendants' counsel.[10] Accordingly, the lodestar "cross-check" confirms that the agreed-to Fee and Expense Amount is fair and reasonable compensation for the Settling Stockholders' Counsel efforts in achieving the substantial benefits of the Settlement.

**D.    The Service Awards Should Be Approved**

Plaintiff respectfully requests the approval of a nominal service award of $2,000 to be paid to each of the four Settling Stockholders from the Fee and Expense Amount in recognition of their role in creating the substantial benefits for PureCycle and its stockholders. *See Weaver*, 2024 U.S. Dist. LEXIS 159346, at *18 (recognizing that courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of" derivative litigation). As set forth in their declarations submitted herewith, Settling Stockholders devoted significant time and effort to the Derivative Matters, including, among other things: providing trade-related documents, reviewing and approving/verifying books and records demands, litigation demands, complaints, and other case filings, reviewing settlement documents including corporate governance reforms, regularly communicating with counsel, and continuing to hold their shares in the Company. *See* Ex. 9, ¶¶3, 5, 6, 12; Ex. 10, ¶¶3, 5, 6, 12; Ex. 11, ¶¶3, 5, 6, 12; Ex. 12, ¶¶3, 5, 6, 12.

The Service Awards will be drawn from the Fee and Expense Amount and so they will not reduce the benefit enjoyed by the Company through the Settlement. These modest awards are reasonable in light of Settling Stockholders' time, effort, and role in securing substantial benefits for the Company and are well within the range approved as fair and reasonable. *See Weaver*, 2024 U.S. Dist. LEXIS 1593465, at *18

---

[10] *See* Brightflag, Hourly Rates in Am Law 100 Firms: Increases and Key Drivers, 2023 (available at https://brightflag.com/asset/law-firm-rates-report/). In this report, billable rates for the top 100 U.S. law firms averaged $961 per hour in the first nine months of 2023 with a billable rate of between $321 and $1,433 per hour across all the firms.

(approving service award of $5,000 "each to Plaintiff and the Demand Shareholder" and noting that when "the service award is NOT coming out of the common fund … courts commonly award incentive funds around $5,000") (emphasis in original); *Clem*, 2025 U.S. Dist. LEXIS 15371, at *22 (approving service award of $2,500); *In Re Mammoth Energy Servs., Inc. Consol. S'holder Litig.*, No. 19-cv-1682 (D. Del. Jan. 25, 2022) (approving service award of $2,000) (Ex. 26).

       **E.**    **The Expenses Are Reasonable And Should Be Approved**

The Fee and Expense Amount includes the reimbursement of Settling Stockholders' Counsel's expenses amounting to $81,293.81, which mainly consist of mediation, expert and filing fees. Such reasonably and necessarily incurred expenses are reimbursable in the context of a derivative settlement and should be approved. *See Weaver*, 2024 U.S. Dist. LEXIS 159346 at *18.

**III.**    **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court grant this Motion in its entirety and approve the agreed-upon Fee and Expense Amount and Service Awards to be drawn therefrom.

Dated: April 10, 2025             Respectfully submitted,

| | |
|---|---|
| **WEISS LAW** | **COOCH AND TAYLOR, P.A.** |
| David C. Katz | |
| Joshua M. Rubin | By: */s/ Blake A. Bennett* |
| Mark D. Smilow | Blake A. Bennett (#5133) |
| 305 Broadway, 7th Floor | The Brandywine Building |
| New York, NY 10007 | 1000 N. West Street, Suite 1500 |
| (212) 682-3025 | Wilmington, DE 19801 |
| dkatz@weisslawllp.com | (302) 984-3800 |
| jrubin@weisslawllp.com | bbennett@coochtaylor.com |
| msmilow@weisslawllp.com | |
| | *Liaison Counsel for Plaintiff* |
| *Lead Counsel for Plaintiff* | |

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole
Correy A. Suk
33 Whitehall Street, 17th Floor
New York, NY 10004
(212) 363-7500
gnespole@zlk.com
csuk@zlk.com

*Additional Counsel for Plaintiff*